**Affirmed and Opinion filed December 18, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-12-00656-CV

## IN THE INTEREST OF A.L., M.L., AND J.Y.R., CHILDREN

**On Appeal from the 315th District Court
Harris County, Texas
Trial Court Cause No. 2010-06710J**

## O P I N I O N

Appellant Maria H. appeals from the trial court's order terminating her parental rights to her daughters, A.L., M.L., and J.Y.R. In four issues, she challenges the legal and factual sufficiency underlying the trial court's termination findings. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 9, 2010, A.Y.R.'s aunt Samantha and uncle Jose visited three-year-old A.Y.R. where she resided with her two sisters, her aunt Maria, Maria's boyfriend Edgar, and Maria's children, A.L., M.L., and J.Y.R.[1]  Samantha noticed A.Y.R. had burns on her

---

[1] In this opinion, "the children" refers to A.L., M.L., and J.Y.R.

legs and took A.Y.R. home. On October 11, Samantha took A.Y.R. to the doctor. The doctor said A.Y.R.'s injuries were "extremely serious," and it appeared that the burns were caused by someone forcing A.Y.R. to stand in "boiling water." The burns covered both of A.Y.R.'s legs up to her knees, were approximately one month old, and "look[ed] infected." Samantha took A.Y.R. to Texas Children's Hospital emergency room on October 12. That evening, the Texas Department of Family and Protective Services (the Department) received a referral alleging neglectful supervision and physical neglect of A.Y.R. by Maria and Edgar. The Department took all six children into custody on the ground that they were in imminent danger of severe neglectful supervision.

Maria gave inconsistent stories to a social worker regarding how A.Y.R. was burned. First, Maria said A.Y.R. climbed into the bathtub, turned on the hot water, and stood in it. Maria then said that she turned on the hot water before A.Y.R. got into the tub. Maria finally said A.Y.R. was in the bathroom playing with her sister, turned on the water, got into the tub, and by the time Maria came into the bathroom, the water was overflowing, and A.Y.R. had gotten out of the tub. Maria and Edgar did not take A.Y.R. to the doctor or hospital because they were afraid the children would be taken away. Maria was treating A.Y.R.'s burns with Neosporin, but the burns became infected. A doctor told the social worker that A.Y.R. appeared to have received the burns when she "was placed into the tub and probably forced to stand in the water by someone pushing down on [her] shoulders." The burns discolored A.Y.R.'s legs, which looked "like a pair of stockings with holes in them in various places." The burns had "destroyed" the pigmentation in A.Y.R.'s legs.

On October 14, the Department filed an Original Petition for Protection of a Child, for Conservatorship, and for Termination of the Parent-Child Relationship as to the children. The trial court entered an emergency protective order making the Department temporary sole managing conservator of the children. The children were placed into a foster home with non-relatives. On October 27, the trial court ordered Maria to comply with the terms of the Department's family service plan. Maria signed the service plan on

January 4, 2011, which notified her that if she did not provide her children with a safe environment within a reasonable time, her parental rights might be terminated.

On October 21, 2011, Maria pleaded guilty, was convicted of reckless injury to a child, a third degree felony, and was sentenced to two years of imprisonment in the Institutional Division of the Texas Department of Criminal Justice.[2]  Maria did not visit the children during the year they were in Department custody before Maria was convicted.  A bench trial was held on April 4, 2012.  By the time of trial, Maria had been released from prison but deported to Mexico and thus did not appear at trial.  In the final termination order signed on July 15, 2012, the trial court terminated Maria's parental rights based on Family Code section 161.001(1), subsections (D), (E), and (L)(ix), finding Maria (1) had been convicted of being criminally responsible for the serious injury of a child under Penal Code section 22.04; (2) knowingly placed or allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being; and (3) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children.  The trial court also found that termination was in the children's best interest under Family Code section 161.001(2).[3]

## LEGAL AND FACTUAL SUFFICIENCY CHALLENGE

In four issues, Maria challenges the legal and factual sufficiency of the evidence supporting the trial court's termination findings.  She specifically argues that the Department did not prove (1) Maria seriously injured A.Y.R. under Maria's proposed definition of "serious injury," (2) the children were in a dangerous environment, or (3) Maria engaged in a continuing course of endangering conduct.  She also argues that the Department should have placed the children with a family member.

---

[2] Edgar was convicted on January 5, 2012 of criminally negligent injury to a child, a state jail felony, and was sentenced to one year of imprisonment in state jail.

[3] The trial court also terminated the parental rights of Edgar, J.Y.R.'s father, and Manuel, A.L. and M.L's father.  The termination of the two fathers' parental rights is not challenged in this appeal.

3

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Due to the severity and permanency of the termination of parental rights, the burden of proof at trial is heightened to the clear and convincing standard. *See* Tex. Fam. Code § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *accord In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re S.N.*, 287 S.W.3d 183, 187 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

When determining legal sufficiency, we review "all the evidence in the light most favorable to the court's finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* However, this does not mean that we must disregard all evidence that does not support the finding. *Id.* Because of the heightened standard, we must also be mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *Id.*

When reviewing a factual sufficiency challenge under the clear and convincing burden, the analysis is somewhat different in that we must consider all of the evidence equally, both disputed and undisputed. *See id.* We must consider whether the evidence is sufficient to produce in the mind of the factfinder a firm belief or conviction as to the truth of the allegation sought to be established. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder

4

could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Texas Family Code, the petitioner must establish, by clear and convincing evidence, one or more acts or omissions enumerated under subsection (1) of section 161.001 and that termination is in the best interest of the child under subsection (2). Tex. Fam. Code § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005); *In re S.N.*, 287 S.W.3d at 187. We need only determine if the evidence is legally and factually sufficient to support a single ground for termination and the trial court's finding that the termination is in the best interest of the children. *See* Tex. Fam. Code § 161.001.

## I.    Termination Based on Conviction for Serious Injury to a Child

Subsection (L) permits termination when clear and convincing evidence shows that the parent has "been convicted . . . for being criminally responsible for the . . . ***serious injury*** of a child under . . . [certain] sections of the Penal Code." *Id.* § 161.001(1)(L) (emphasis added). One of the enumerated sections of the Penal Code is section 22.04. *Id.* § 161.001(1)(L)(ix) (involving injury to a child, elderly individual, or disabled individual). A person commits an offense under section 22.04 if she "intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child . . . serious bodily injury . . . or . . . bodily injury." Tex. Penal Code § 22.04(a)(1), (3). Maria admits that she was convicted of reckless injury of a child under Penal Code section 22.04, but bases her sufficiency challenge on the premise that the Department did not show that A.Y.R. suffered "serious injury" resulting from the burns on her legs that were not treated for a month. The Family Code does not define "serious injury," and Maria urges us to adopt the Penal Code's definition of "serious bodily injury" as the standard required for subsection (L) to support termination. We decline to do so.

5

Maria points out that proving reckless injury to a child requires an establishment of "serious bodily injury" or "bodily injury." The Penal Code defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ" and "bodily injury" as "physical pain, illness, or any impairment of physical condition." *Id*. § 1.07(a)(8), (46). Because subsection (L) requires "serious injury," Maria argues that the Department was required to show "serious bodily injury" was inflicted in the commission of the offense for section (L)(ix) to support termination. Maria contends the Department did not offer sufficient evidence to show that A.Y.R. suffered serious bodily injury as defined in the Penal Code.

"Serious injury," as used in subsection (L) modifies all the offenses listed thereunder. Not all offenses listed in subsection (L) require bodily injury. *See C.H. v. Dep't of Family & Protective Servs.*, Nos. 01-11-00385-CV, 01-11-00454-CV, 01-11-00455-CV, 2012 WL 586972, at *4-5 (Tex. App.—Houston [1st Dist.] Feb. 23, 2012, pet. denied) (mem. op.) (listing offenses covered by subsection (L)). We conclude demonstrating "serious injury" to a child under subsection (L) does not require a showing of "serious bodily injury" as defined in the Penal Code. *See Medellin v. Tex. Dep't of Family & Protective Servs.*, No. 03-11-00558-CV, 2012 WL 4466511, at *5 n.5 (Tex. App.—Austin Sept. 26, 2012, no pet.) (mem. op.); *C.H.*, 2012 WL 586972, at *5.

When, as here, a term is not defined in a statute, we apply its ordinary meaning. *See* Tex. Gov't Code § 312.002; *City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 n.19 (Tex. 2006); *C.H.*, 2012 WL 586972, at *6. Our sister court in Houston has adopted a dictionary definition of "serious injury" to be applied in this context, which we also adopt. *C.H.*, 2012 WL 586972, at *6. "Serious" means "having important or dangerous possible consequences," while "injury" means "hurt, damage, or loss sustained." *Id*. (citing *Webster's New Collegiate Dictionary* 589, 1050 (1981)).

The Department presented the following evidence at trial: A.Y.R. suffered third degree "stocking burns" up to her knees that left her legs severely discolored with

6

destroyed pigmentation a month after she was injured. These burns became infected because Maria refused to take A.Y.R. to the doctor. The doctor described the burns as "extremely serious." Pictures of the burns admitted at trial also show that the burns were severe. These burns resulted in dangerous consequences for A.Y.R.

We conclude that the evidence, viewed in the light most favorable to the subsection (L)(ix) finding, was sufficiently clear and convincing that a reasonable factfinder could have formed a firm belief or conviction that Maria was convicted under Section 22.04 of the Penal Code for being criminally responsible for the serious injury of A.Y.R. We further conclude that, viewed in light of the entire record, any disputed evidence could have been reconciled in favor of the subsection (L)(ix) finding or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that the elements of subsection (L)(ix) were shown. Accordingly, we hold that the evidence is legally and factually sufficient to support the subsection (L)(ix) finding. Thus, we do not reach Maria's challenges to the trial court's findings under subsection (D) or (E).

## II. Best Interest of the Children

Maria also challenges the legal and factual sufficiency of the trial court's finding that termination was in the children's best interest pursuant to section 161.001(2). There is a strong presumption that the best interest of a child is served by keeping the child with his or her natural parent, and the burden is on the Department to rebut that presumption. *In re S.N.*, 287 S.W.3d at 191. To rebut this presumption, there must be clear and convincing evidence of the natural parent's present unfitness. *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The same evidence of acts or omissions used to establish grounds for termination under section 161.001(1) may be probative in determining the best interest of the child. *In re S.N.*, 287 S.W.3d at 191.

In reviewing the sufficiency of the evidence to support the best interest finding, a court examines several factors, including (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and

physical danger to the child, (4) the parental abilities of the persons seeking custody, (5) the programs available to assist those persons seeking custody in promoting the best interest of the child, (6) the plans for the child by the individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate, and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *In re S.N.*, 287 S.W.3d at 191. This list is not exhaustive, and evidence is not required on all nine factors to support a finding terminating a parent's rights. *Holley*, 544 S.W.2d at 372; *In re S.N.*, 287 S.W.3d at 191. With these considerations in mind, we review the evidence below.

**Non-relative placement**. As an initial matter, we address Maria's argument that termination is not in the best interest of the children because they should be placed with relatives. Maria does not seek custody of the children. In fact, her brief states that she "showed no interest in assuming any parental responsibilities." She simply argues that suitable family members are available to care for the children with whom she believes the children should be placed. Maria provides no authority to suggest that this issue is relevant to the question of whether her parental rights should have been terminated.[4] *See Rogers v. Dep't of Family & Protective Servs.*, 175 S.W.3d 370, 379 (Tex. App.— Houston [1st Dist.] 2005, pet. dism'd w.o.j.). The determination of where a child will be placed is a factor in determining the child's best interest, but the fact that placement will be with non-relatives is not a bar to termination. *Id*.

**Desires of the children**. The children told the Department's social worker that they wanted to stay with the foster family and did not remember any relatives.

---

[4] At a permanency hearing, the trial court must evaluate the efforts of the Department to identify relatives who could provide the child with a safe environment if the child is not returned to a parent. *See* Tex. Fam. Code § 263.404(a)(2). However, this rule applies only when the trial court issues a final order appointing the Department as managing conservator without terminating parental rights. *Id*.

**Present and future physical and emotional needs of the children**. Regarding this factor, we note that the need for permanence is a paramount consideration for the child's present and future physical and emotional needs. *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The goal of establishing a stable, permanent home for a child is a compelling government interest. *Id*. The children had been living in the same foster home for 18 months by the time of trial. They were happy with their foster family. No other evidence was presented at trial regarding the children's needs.

**Present and future emotional and physical danger to the children**. To "endanger" means to expose a child to loss, injury, or danger. *Id.* at 534. The endangering conduct does not have to occur in the presence of the child. *Id*. Proof of acts or omissions under section 161.001(1) are probative on this issue. *See In re C.H.*, 89 S.W.3d at 28. We consider in particular, under the facts of this case, the young ages and mental vulnerabilities of the children when A.Y.R. was burned and Maria refused to take A.Y.R. to the doctor[5] and that Maria was the perpetrator of harm to A.Y.R. while the children lived with her. *See* Tex. Fam. Code § 263.307(b)(1), (9), (11) (listing factors in consideration of whether parent is willing and able to provide children with safe environment).

**Parental abilities and available programs**. These factors take into account the parental abilities of and programs available to the person seeking to avoid termination. *See In re D.R.A.*, 374 S.W.3d at 534-35. The record evidence, as set forth above, demonstrates that Maria lacked parenting skills, she disciplined A.Y.R. by forcing her to stand in hot water, and she refused to take A.Y.R. to the doctor after A.Y.R.'s legs were burned. Maria presented evidence that either her brother or sister should have custody of the children. As set forth above, the fact that relatives seek custody is not relevant to whether *termination* is in the best interest of the child, so it does not factor into our analysis. *See Rogers*, 175 S.W.3d at 379.

---

[5] The children were three-, five-, and eight-years-old at the time.

**Plans for the child by individuals or agency seeking custody and stability of home or proposed placement.** These two factors compare the agency's plans and proposed placement of the child with the plans and home of the parent seeking to avoid termination. *See In re D.R.A.*, 374 S.W.3d at 535. As set forth above, Maria did not seek custody of the children at trial. Moreover, she was no longer in the United States, and no evidence was presented of her exact whereabouts or living conditions. Similarly, no evidence was presented of the condition of the foster family's home. However, the foster family had custody of the children for the 18 months leading up to trial and wishes to adopt them, which is the Department's recommendation. *See In re C.H.*, 89 S.W.3d at 28 (noting evidence about placement plans and adoption are relevant to best interest but must be considered in context of entire record).

**Acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate and any excuses for acts or omissions**. We finally consider Maria's acts or omissions and any excuses for them. As set forth above, Maria said that she did not take A.Y.R. to the doctor because she was afraid her children would be taken away. Maria treated A.Y.R.'s burns with Neosporin but allowed them to become infected. Although Maria was later imprisoned and then deported, Maria did not visit her children or attempt to comply with the Department's family plan for the year before she was convicted of reckless injury to A.Y.R. The trial court, as the factfinder, reasonably could have formed a firm belief or conviction that Maria had inadequate excuses for her actions and omissions.

Viewing the evidence in the light most favorable to the judgment for our legal sufficiency analysis and all of the evidence equally for our factual sufficiency analysis, we conclude that a reasonable factfinder could have formed a firm belief or conviction that the best interest of the children would be served by termination of Maria's parental rights. We therefore conclude the evidence is legally and factually sufficient to support the trial court's best-interest finding.

10

We overrule Maria's legal and factual sufficiency challenges to the trial court's findings.  We affirm the judgment of the trial court.


/s/              Martha Hill Jamison
                          Justice

Panel consists of Justices Frost, Christopher, and Jamison.