

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00299-CV

**IN THE INTEREST OF M.L.R.**, a Child

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-PA-03170
Honorable Gloria Saldaña, Judge Presiding

Opinion by:  Catherine Stone, Chief Justice

Sitting:  Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  August 21, 2013

AFFIRMED

This is an appeal of an order terminating Michael R.'s parental rights to M.L.R. following a bench trial. Michael challenges the sufficiency of the evidence to support the termination of his rights. We affirm the trial court's order.

### SUFFICIENCY OF THE EVIDENCE

The first issue raised by Michael in his brief is a challenge to the sufficiency of the evidence to support the trial court's finding of a predicate ground for terminating his parental rights. In his second issue, Michael contends the evidence is insufficient to support the trial court's finding that termination of Michael's parental rights was in M.L.R.'s best interest.

**A.      Standard of Review**

To terminate parental rights pursuant to section 161.001 of the Family Code, the Department has the burden to prove: (1) one of the predicate grounds in subsection 161.001(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(1), (2) (West Supp. 2012); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The applicable burden of proof is the clear and convincing standard. TEX. FAM. CODE ANN. § 161.206(a) (West 2008); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008).

Legal sufficiency review of the evidence to support a termination finding requires a court to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id*. "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id*.

In reviewing the factual sufficiency of the evidence to support a termination finding, a court "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*.

**B.    Predicate Grounds for Termination**

With regard to the necessary predicate ground for terminating Michael's parental rights, the trial court found that Michael has been convicted or has been placed on community supervision for being criminally responsible for the death or serious injury of a child under section 21.11 of the Texas Penal Code (indecency with a child). *See* TEX. FAM. CODE ANN. § 161.001(1)(L)(iv) (West Supp. 2012).

The record in this case contains a judgment documenting Michael's conviction of indecency with a child based on his guilty plea. Michael was sentenced to five years' imprisonment and ordered to register as a sex offender. Jennifer Gaines, the CPS caseworker, testified that Michael told her he pled guilty because his attorney misled him. Sherilynn Grimsley, who was Michael's counselor, testified that Michael never admitted to engaging in the offense, but stated that he was wrongfully convicted. Although Michael admitted that he pled guilty to the offense, he stated that the events to which he stipulated did not happen. Michael stated that the victim of the offense was the nine-year-old daughter of a woman he was dating.

The stipulations Michael signed in connection with his plea also were introduced into evidence. Attached to the stipulations were the police report and the statements made by the victim and her mother describing the offense, which included Michael putting his mouth on the child's vagina and breasts. Michael's brother testified that he asked Michael about the conviction when Michael was released from prison, and Michael told him he was not drunk or on drugs that "it just happened." Michael also admitted that he became eligible for parole during his term of incarceration, but parole was denied each time.

In his brief, Michael challenges the sufficiency of the evidence based on the "questionable circumstances of conviction." Although Michael denies committing the offense, his brother testified that Michael admitted to him that he committed the offense. In addition, the record

contains the statements the victim and her mother made to the police describing the details of the offense. Moreover, although the stipulations contained a typographical error, the documentation attached to the stipulations clearly references Michael and the offense he committed.

Michael also contends in his brief that the record contains no evidence that the offense caused serious injury to the child victim. The offense report noted that the offense was reported after the victim took off her blouse at her daycare and showed the other children her breasts. The investigating officer noted that when he questioned the victim about whether Michael would touch her anywhere other than on her breasts, "she would become withdrawn and quiet." The officer then advised the victim's mother that the victim was under some type of emotional stress, and he would not proceed any further with her statement.

In his brief, Michael cites *In re L.S.R.*, 60 S.W.3d 376 (Tex. App.—Fort Worth 2001), *pet. denied*, 92 S.W.3d 529 (Tex. 2002), as support for his position that the record does not contain evidence that the offense he committed caused serious injury to the victim. In denying the petition for review in that case, however, the Texas Supreme Court "disavow[ed] any suggestion that molestation of a four-year-old, or indecency with a child, generally, does not cause serious injury." *In re L.S.R.*, 92 S.W.3d at 530; *see also In re A.L.*, 389 S.W.3d 896, 900-01 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (noting Penal Code definition of "serious bodily injury" differs from showing of "serious injury" under section 161.001(1)(L)). In this context, we agree with our sister court that "serious" means "having important or dangerous possible consequences," while "injury" means "hurt, damage, or loss sustained." *In re A.L.*, 389 S.W.3d at 901. Assuming the record must show that the victim of molestation suffered serious injury, in this case, the victim's actions at her daycare as a consequence of the offense and her reaction while being questioned are sufficient evidence of serious injury.

Having reviewed the record as a whole, including the evidence summarized above, we hold that the evidence is legally and factually sufficient for the trial court to have formed a firm belief or conviction that Michael was convicted for being criminally responsible for the serious injury of a child by committing the offense of indecency with a child.

**C.     M.L.R.'s Best Interest**

In reviewing the sufficiency of the evidence to support the best interest finding, we apply the factors set out in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include: (1) the desire of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the plans held by the individual seeking custody for the child; (6) the stability of the home of the parent; (7) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (8) any excuse for the acts or omissions of the parent. *Id.* The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

M.L.R. was approximately three-months-old when she was removed from her parent's care for medical neglect and neglectful supervision. M.L.R.'s mother would be under the influence of cocaine in M.L.R.'s presence, and Michael was aware of this drug use. M.L.R. had never been taken to any doctor's appointments since her birth, and had not received any vaccinations.

M.L.R. was eighteen-months-old at the hearing. Since her removal, M.L.R. had been in the care of Michael's cousin, Melissa M., who had met all of M.L.R.'s needs and who desired to adopt M.L.R.

With regard to present and future emotional and physical danger to M.L.R., Gaines testified that Michael's risk assessment labeled him as having a moderate level, indicating a moderate danger to the community and the possibility that he may continue to engage in criminal sexual misconduct. However, the Able Assessment performed on Michael fell within the range of a normal adult heterosexual male. The Able Assessment is a test used to identify whether an individual has a propensity for a particular sexual interest in different populations. Although the test revealed an elevated interest in adolescent females, an elevated interest in adolescent females among heterosexual males is not considered to be a cause for concern.

With regard to Michael's parenting ability and plans, Michael had completed many of the terms of his plan of service, including a psychological evaluation and parenting classes. Michael was employed and lived in a home at the time of the hearing. Pictures of Michael's home and M.L.R.'s potential bedroom were introduced into evidence; however, the record contains references to an internet search that revealed the house had only one bedroom, rather than two. Although Michael had completed some aspects of his service plan, he did not complete his therapy. Grimsley, who was Michael's counselor, testified that Michael did not complete his therapy because he failed to meet any of the treatment goals. Grimsley testified that Michael failed to achieve the goals in part because Michael never accepted responsibility for his criminal conduct and also because he attempted to manipulate others' perceptions of him. Michael's psychological evaluation revealed that Michael engages in "something that is termed faking good or attempting to make himself look like he didn't have any problems or that he had no flaws." Michael initially denied having a legal history. After Grimsley informed him that she would be accessing his records, he informed her that he was convicted of a sex offense that he did not commit. Grimsley stated that Michael was not forthcoming with information about the offense and that he told her the mother of the victim was angry with him and threatened to have her daughter say that Michael

had molested her.  In contrast to Grimsley's testimony, Michael stated that he tried to discuss his conviction with Grimsley, but she told him they would discuss it later.

Gaines testified that Michael's plan was to be a weekend dad, with Melissa caring for M.L.R. during the week.  Michael had not explained to Gaines how he could coordinate M.L.R.'s care if he was required to place her in daycare or when she attended school since he could not be around other children as a registered sex offender.  Michael testified that he planned for M.L.R. to live with him and had inquired about daycare for M.L.R.  Michael stated he was informed that he would be able to drop M.L.R. off and pick her up from daycare.  Michael's understanding was that only people who are on parole or probation for a sex offense cannot go into a school or be around children.  Although Melissa worked full-time and had M.L.R. enrolled in daycare, Michael failed to pay any money to support M.L.R. while she was in Melissa's care.  Michael testified that he offered to pay money to support M.L.R., but Melissa told him not to worry about it.  Melissa testified that she and Michael never talked about child support.

 Michael testified that he previously helped raise his two other biological children who were adults at the time of the hearing.  Michael further testified that he helped raise two additional stepchildren.  Michael's son testified that his dad helped to raise him and was a good father, and Michael's ex-wife confirmed that he had assisted her in raising her two younger children before and after he was in prison.  Michael's son and his girlfriend stated that they would assist Michael in caring for M.L.R.

The primary focus in a termination suit is the best interest and protection of the child, not the best interest of the parent.  *In re A.V.*, 113 S.W.3d at 361; *In re R.F.*, 115 S.W.3d 804, 812 (Tex. App.—Dallas 2003, no pet.).  "The need for permanence is the paramount consideration for a child's present and future physical and emotional needs."  *In re R.F.*, 115 S.W.3d at 812.  "The

goal of establishing a stable, permanent home for a child is a compelling governmental interest." *Id*.

In this case, Melissa had provided and would continue to provide M.L.R. with a stable, caring environment. In weighing the conflicting evidence, the trial court could have found that Michael failed to provide any financial support for M.L.R. during the fifteen months she was in Melissa's care preceding the hearing, raising questions about his ability to financially support and provide M.L.R. with a stable home in the future. The trial court also could have given consideration to the effect Michael's sex offender registration requirements could have on his ability to transport M.L.R. to daycare and school. In addition, given Michael's admission to his brother that he engaged in the actions for which he was convicted, the trial court could have placed great weight on Michael's refusal to take responsibility for his criminal actions, especially in view of Grimsley's testimony that Michael attempted to place the blame for his conviction on the victim's mother.

Having reviewed the record as a whole with our primary focus on M.L.R.'s best interest, we hold the evidence is sufficient for the trial court to have formed a firm belief or conviction that terminating Michael's parental rights was in M.L.R.'s best interest.

## CONCLUSION

The trial court's order is affirmed.

Catherine Stone, Chief Justice