**Opinion issued April 2, 2019**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00728-CV

_____

## IN THE INTEREST OF S.G. AND D.D.-G.P., CHILDREN

---

### On Appeal from the 314th District Court
### Harris County, Texas
### Trial Court Case No. 2016-02466J

---

## MEMORANDUM OPINION

This is an appeal from a judgment terminating the parental rights of a mother as to her son and daughter, terminating the parental rights of the father of the son and the parental rights of the father of the daughter, and appointing the Department of Family and Protective Services as the children's managing conservator. The mother and both fathers challenge the legal and factual sufficiency of the evidence

supporting the jury findings underlying the termination of their parental rights. The mother also contends that the jury charge's instruction on conservatorship was defective. Finding no error, we affirm the judgment of the trial court.

## BACKGROUND

*Pre-Trial*

The Department opened a child-neglect investigation as to the mother and her 6-year-old son, Don, and 3-year-old daughter, Sally, after receiving allegations that the mother was doing drugs and the children were living in deplorable conditions.[1] The children came into the Department's care after the mother tested positive for cocaine and marijuana.

Don and Sally have different fathers, both of whom appeared in the case. They also tested positive for drugs at the outset of the investigation.

The Department initially sought to reunify Don and Sally with their mother, but this changed after she continued to test positive for illegal drug use, including two relapses during the pendency of this case after participating in drug-rehabilitation programs. By the mother's own admission, her history of drug abuse spans more than two decades. She tested positive for drugs in two prior child-protection cases.

---

[1] "Don" and "Sally" are pseudonyms. *See* TEX. R. APP. P. 9.8(b)(2).

2

The Department sought termination of the mother's rights as well as the rights of both fathers. The mother demanded trial by jury, and the grounds for termination as to all three parents were tried to the same jury.

*The Mother*

The children's mother, now 39 years old, testified that she first began using marijuana when she was 18 and started using cocaine a decade ago. She admitted that she's had a drug problem and has been to rehab three times since 2000. She stated that she believed her drug use has harmed Don, and she agreed that her children deserve a sober parent. She denied using methamphetamine, notwithstanding that she tested positive for using it less than four months before trial. Her drug-recovery coach, the program coordinator at the Houston Recovery Center, testified that the mother had told her that she's been using methamphetamine, cocaine, and marijuana for years and expressed concern as to the mother's denial of methamphetamine use at trial because honesty is the number one principle of recovery. The mother acknowledged relapsing twice during the pendency of this case. Her drug-test results show that she used cocaine in addition to the aforementioned use of methamphetamine.

*Sally's Father*

Sally's father was in county jail when Sally was removed from the home. When he appeared after his release, he tested positive for methamphetamine,

cocaine, and marijuana. His test results indicated chronic cocaine abuse. In several later drug tests, the father's urine showed no drug use, but he did not give hair samples because he did not have enough hair on his head or body to test. He explained at trial that his lack of hair was due to his job as a millwright and welder, which involves hot working conditions. He characterized his cocaine use as occasional and denied methamphetamine and marijuana use entirely.

The Department introduced evidence of Sally's father's criminal history, which included two convictions for burglary of a habitation, a conviction for possession of cocaine, three convictions for assault, one of which involved family violence, and a conviction for the unlawful carrying of a weapon. The father agreed that he had a substantial criminal record, but he disputed his responsibility for the most recent assault, which involved the wife of the mother's brother. The mother testified that the children were present when this incident occurred.

Sally's father testified that Sally's mother is a good mom. He stated that they had done drugs together before she became pregnant with Sally, but that he was unaware of any drug use by the mother afterward.

*Don's Father*

Don's father tested positive for cocaine and marijuana when he appeared in the case. His results indicated chronic marijuana use. But at trial he denied chronic marijuana use and said that he had only used cocaine on a single occasion.

4

He was convicted of aggravated sexual assault of child in 2001. He was 20 years old at the time of the offense; his victim was a 13-year-old girl. He was placed on deferred adjudication community supervision initially but was incarcerated after he violated the terms of his supervision. He was released from prison for this offense in 2008 but he is required to register as a sex offender for the rest of life. He explained his conviction to the jury in this case by saying that he had been young and made a mistake.

Don's father stated that he and Don's mother discontinued their relationship when Don was around 2 years old. He saw Don only twice between 2013 and 2015. He said he lacked the transportation to see Don, given that the mother lived on the opposite side of town. He did not pay child support, despite being employed since his release from prison.

He testified that Don's mother was a good mom. He said he never saw her use drugs and did not know that she had.

### Special Investigator

Lisa McCartney, a special investigator and child abuse expert for the children's attorney ad litem, testified that further contact with their parents was not in Don and Sally's best interest. She noted that the children already have been in the Department's care for almost two years and require permanency. She opined that the

sole possibility for a permanent placement for the children requires termination of the parents' rights.

Among the circumstances that McCartney considered in deciding that termination of parental rights was in the children's best interest, she noted that:

- the mother has a nearly 20-year history of drug use, specifically cocaine and marijuana;

- the parents falsely minimize their drug use and generally are not honest about matters relevant to their children's welfare;

- Sally's father has a lengthy criminal history; and

- Don's father has not played an active role in his son's life, has not paid child support, and is a lifetime registered sex offender.

According to McCartney, none of the children's parents has shown an ability to provide a safe, stable environment for the children.

*Directed Verdict Motion*

After the Department rested, Don's father moved for a directed verdict, which the trial court denied. No other party moved for a directed verdict.

*Jury Verdict*

The trial court's charge submitted several grounds for termination of parental rights in the disjunctive as to each parent. The jury found that there was clear and convincing evidence:

(1) to terminate the mother's rights under section 161.001(b)(1)(D), (E), (O), or (P) of the Family Code and that termination was in their best interest;

(2) to terminate Sally's father's rights under section 161.001(b)(1)(D), (E), or (O) of the Family Code and that termination was in her best interest; and

6

(3) to terminate Don's father's rights under section 161.001(b)(1)(D), (E), or (L) of the Family Code and that termination was in his best interest.

The jury further found that the Department should be appointed as the children's managing conservator. The trial court entered a decree of termination in conformity with the jury's verdict.

*Post-Trial*

Both fathers moved for a new trial on evidentiary insufficiency grounds. The mother did not move for a new trial. All parents appeal.

## DISCUSSION

### I. Applicable Law, Standard of Review, and Error Preservation

#### A. Legal standard for termination of parental rights

A parent's rights to the care, custody, and management of his or her children are constitutional in scope. *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). But parental rights are not absolute; the Department may terminate the rights of those who are not fit to accept the responsibilities of parenthood. *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). The primary focus in a termination suit is protecting the children's best interest. *Id.*

To terminate parental rights under the Family Code, the Department must establish that a parent committed one or more statutorily enumerated predicate acts or omissions, and that termination is in the children's best interest. TEX. FAM. CODE § 161.001(b)(1), (2). The Department need only establish one of these predicate acts

7

or omissions, along with the best-interest finding. *See id.*; *A.V.*, 113 S.W.3d at 362. But the Department must make these showings by clear and convincing evidence. TEX. FAM. CODE § 161.001(b). Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

Section 161.001(b)(2)'s best-interest finding is a separate inquiry from section 161.001(b)(1)'s predicate acts and omissions. *In re S.R.L.*, 243 S.W.3d 232, 235 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Evidence used to prove predicate acts or omissions nevertheless may be probative in deciding a child's best interest. *In re A.A.A.*, 265 S.W.3d 507, 516 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

Multiple non-exclusive factors bear on a child's best interest. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include:

- the desires of the child;
- the emotional and physical needs of the child now and in the future;
- the emotional and physical danger to the child now and in the future;
- the parental abilities of those seeking custody;
- the programs available to assist them to promote the child's best interest;
- their plans for the child or the plans of the agency seeking custody;
- the stability of the home or proposed placement;
- the acts or omissions of the parent that may indicate the existing parent-child relationship is not proper; and
- any excuse for the parent's acts or omissions.

*Id.*; *Yonko v. Dep't of Family & Protective Servs.*, 196 S.W.3d 236, 243 (Tex. App.—Houston [1st Dist.] 2006, no pet.). These factors are not exhaustive, no one factor is controlling, and a single factor may be adequate to support termination on a particular record. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *In re J.M.T.*, 519 S.W.3d 258, 268 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

**B.     Legal and factual sufficiency review in termination cases**

In conducting a legal-sufficiency review in an appeal from a termination order, we examine the evidence in a light favorable to the findings and determine whether a reasonable jury could have formed a firm belief or conviction that the finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the jury resolved disputed facts in favor of its finding if a reasonable jury could do so and disregard all evidence that a reasonable jury could have disbelieved or found not to have been credible. *Id.* If we determine that no reasonable jury could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient. *Id.*

In conducting a factual-sufficiency review, we determine whether, considering the entire record, a jury reasonably could have formed a firm conviction or belief about the truth of the matter on which the Department bore the burden of proof. *See id.*; *C.H.*, 89 S.W.3d at 25. We consider whether the disputed evidence is such that a reasonable jury could not have resolved the disputed evidence in favor

9

of its finding. *J.F.C.*, 96 S.W.3d at 266. Viewed in light of the whole record, if the disputed evidence that a reasonable jury could not have credited in favor of a finding is so significant that the jury could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

Deciding whether and to what degree to credit the evidence introduced at trial is the jury's role, not ours. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). The jury is the sole evaluator and arbiter of witness credibility. *Id.*

## C. Preservation of error as to legal and factual sufficiency

In an appeal from a judgment rendered on the basis of a jury verdict, including a judgment terminating parental rights, a party cannot complain about the legal and factual sufficiency of the evidence for the first time on appeal. *See* TEX. R. CIV. P. 33.1(d). To preserve a challenge to the legal sufficiency of the evidence for appellate review, a party must:

- move for an instructed verdict;
- object to the submission of a jury question;
- move for judgment notwithstanding the verdict; or
- move for a new trial.

*In re J.M.S.*, 43 S.W.3d 60, 62 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *In re C.E.M.*, 64 S.W.3d 425, 427 (Tex. App.—Houston [1st Dist.] 2000, no pet.). To preserve a challenge to the factual sufficiency of the evidence, a party must move for a new trial. TEX. R. CIV. P. 324(b)(2), (3); *In re A.C.*, 394 S.W.3d 633, 639 (Tex.

10

App.—Houston [1st Dist.] 2012, no pet.); *J.M.S.*, 43 S.W.3d at 62. The party's motion or objection also must be reasonably specific as to the nature of the evidentiary sufficiency challenge that is being made to preserve error on that point. *See* TEX. R. APP. P. 33.1(a)(1)(A); TEX. R. CIV. P. 268, 274, 301, 321–22; *see, e.g.*, *C.E.M.*, 64 S.W.3d at 428 (instructed-verdict motion "on all grounds" too general to preserve error; new-trial motion challenging implied best-interest finding did not preserve error as to findings on statutory predicate acts or omissions).

## II.  Mother's Appeal

The mother demanded trial by jury and received one.

She contends that the evidence is legally and factually insufficient to support findings that termination of her parental rights was warranted under section 161.001(b)(1)(D), (E), (O), and (P) or that it was in the children's best interest. But she did not move for an instructed verdict, object to the submission of a jury question, move for judgment notwithstanding the verdict, or move for a new trial. Thus, she did not preserve these issues for review. *See J.M.S.*, 43 S.W.3d at 62.

The mother also contends that the charge was defective in that it did not properly instruct the jury as to the circumstances under which it could find that the Department should be appointed as the children's managing conservator. She did not, however, object to the charge in the trial court. She therefore did not preserve this issue for review either. *See* TEX. R. APP. P. 33.1(a); TEX. R. CIV. P. 274, 279.

**III.    Sally's Father's Appeal**

Sally's father contends that the evidence is legally and factually insufficient to show that he did not comply with his court-ordered family services plan by failing to submit to random drug testing. He argues that he provided a urine sample on each test date and that he did not provide hair samples for testing only because he lacked adequate hair to be tested due to his employment as a welder. He further contends that the evidence is legally and factually insufficient to show that he endangered Sally's well-being or that termination of his parental rights is in Sally's best interest.

**A.    Applicable law**

A finding that a parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child" may support termination. TEX. FAM. CODE § 161.001(b)(1)(O). This includes failure to comply with a court-ordered family service plan's drug tests. *J.M.T.*, 519 S.W.3d at 269. A jury may conclude that a parent's refusal to provide samples for testing, including hair or fingernail samples, reflects an attempt to conceal drug use. *Id.*

Drug use and its impact on a parent's life and his ability to parent also may establish in some cases a course of conduct sufficient to support termination for engaging in conduct that endangers the physical or emotional well-being of the child. TEX. FAM. CODE § 161.001(b)(1)(E); *J.O.A.*, 283 S.W.3d 345; *Toliver v. Tex. Dep't*

*of Family & Protective Servs.*, 217 S.W.3d 85, 98 (Tex. App.—Houston [1st Dist.] 2006, no pet.). There need not be any direct evidence showing that the parent's drug use injured the child to warrant termination for endangerment. *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617–18 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Because parental drug use exposes a child to the possibility that the parent may be impaired or incarcerated, drug use can suffice to support an endangerment finding. *Id.* at 617–18; *Toliver*, 217 S.W.3d at 98.

Parental drug abuse also reflects poor judgment and an unwillingness to prioritize a child's safety and welfare and thus may be considered in determining a child's best interest. *A.C.*, 394 S.W.3d at 642. The jury is entitled to give great weight to a parent's drug-related conduct in assessing his child's best interest. *In re E.R.W.*, 528 S.W.3d 251, 266 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Failure to complete all tasks and services required by a family service plan likewise may reflect parental unfitness and thus support a finding that termination is in a child's best interest. *In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013); *J.M.T.*, 519 S.W.3d at 269–70.

**B.    Analysis**

Sally's father was initially drug-tested in May 2016. The test results from his urine sample were negative for drugs. The results from his hair sample were positive

for marijuana, cocaine, and methamphetamine, and they specifically indicated that his use of cocaine was chronic and that he used methamphetamine more than once.

The urine and hair results are not contradictory. Urine testing reveals current use of drugs—generally use within three days of the test—while hair testing reveals drug use that is remoter in time from the date of the test.

The trial court later ordered the father to complete a family service plan. As part of the plan, he agreed to not use drugs and to submit to further drug tests. The plan stated that "drug testing will be an ongoing task throughout this case, understanding that failure to do so is considered by the agency to indicate current use of drugs."

Afterward, Sally's father was drug-tested in June 2016, September 2016, November 2016, July 2017, November 2017, and March 2018. His urine sample in June 2016 was positive for cocaine and his hair sample on that date showed marijuana use and chronic cocaine use. On each subsequent occasion, the father provided a clean urine sample but did not provide a hair sample because he did not have adequate hair for testing on his head or body.

Notwithstanding the positive drug-test results, the father denied having used marijuana or methamphetamine at trial. He admitted to using cocaine but characterized his use as occasional or on-and-off over time.

As to the inability to provide hair samples for testing after June 2016, Sally's father explained that, as a millwright and welder working in hot conditions, he shaves his body hair, because he gets a rash, hives, and abscesses if he allows his hair to grow out. The owner of the company that tested the father for drugs corroborated the father's explanation that welders generally have short hair and sometimes shave their underarms due to their work conditions.

In sum, the jury heard evidence that Sally's father tested positive for drug abuse at the outset of the case, including chronic cocaine use, and that he subsequently failed to provide the hair samples necessary to detect long-term chronic use. He explained to the jury that his job as a welder prevented him from having hair long enough to provide a sample, but the jury was not obligated to accept his explanation and we cannot second-guess the jury's credibility determinations. *See J.O.A.*, 283 S.W.3d at 346. Setting aside the jury's prerogative in evaluating witness demeanor, we note that Sally's father denied using marijuana and methamphetamine even though he tested positive for these drugs, and he described his use of cocaine as occasional, contrary to the test results showing chronic use. On this record, reasonable jurors could have formed a firm belief or conviction that Sally's father was removing his hair to prevent the collection of hair samples that would have revealed his continued drug abuse, and, as a result, could have resolved the disputed evidence in favor of this finding.

15

We thus conclude that the evidence was legally and factually sufficient to show by clear and convincing evidence that termination was warranted under section 161.001(b)(1)(E) and section 161.001(b)(1)(O). Having decided that the evidence suffices to support these findings, we need not consider whether it would support the other predicate ground for termination—section 161.001(b)(1)(D)—considered by the jury. *See* TEX. R. APP. P. 47.1; *A.V.*, 113 S.W.3d at 362; *In re S.C.F.*, 522 S.W.3d 693, 701 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

This evidence also is legally and factually sufficient to support the jury's finding that termination of Sally's father's parental rights was in her best interest. The jury reasonably could have found that her father frequently used cocaine, continued to do so even after his parental rights were at stake, and tried to conceal his continued use instead of discontinuing it. The jury reasonably could have concluded further that this course of conduct showed that termination of his parental rights would safeguard Sally from emotional and physical danger now and in the future and that her father lacked the ability to place Sally's well-being ahead of his desire to do drugs. Moreover, Sally's father was incarcerated when she came into the Department's care, and he has a lengthy criminal history, including convictions for:

- burglary of a habitation in 1991;
- possession of cocaine in 1991;
- burglary of a habitation in 1992;

16

- assault in 2004;
- unlawful carrying of a weapon in 2005;
- assault/family violence in 2010; and
- assault in 2015.

When considered in conjunction with chronic drug use, a reasonable jury could have concluded based on this criminal history that Sally's father was a source of substantial instability that could jeopardize her emotional and physical needs. *See Walker*, 312 S.W.3d at 617 (repeated criminal conduct subjecting child to probability of separation from parent due to parent's incarceration endangers child's physical and emotional well-being).

The father contends on appeal that he has a strong bond with Sally and believes that she desires him to play a role in her life. While the desires of the child are a relevant consideration, Sally is at a tender age and thus cannot provide meaningful input as to whether termination is in her best interest. Indeed, her youth and consequent vulnerability weighs in favor of the jury's finding that termination is in her best interest. *See In re M.F.*, No. 01-17-008350-CV, 2018 WL 1630180, at *7 (Tex. App.—Houston [1st Dist.] Apr. 5, 2018, pet. denied) (mem. op.) (child's young age weighed in favor of best-interest finding). A child's love for a parent merits less weight when the parent has engaged in conduct that is a danger to the child's well-being. *In re J.J.S.*, No. 14-17-00359-CV, 2017 WL 4518595, at *11 (Tex. App.—Houston [14th Dist.] Oct. 10, 2017, pet. denied).

On this record, a reasonable jury could have formed a firm belief or conviction that the termination of the father's parental rights was in Sally's best interest and the disputed evidence was not such that the jury could not have resolved these disputes in favor of its best-interest finding. We thus conclude that the evidence was legally and factually sufficient to show by clear and convincing evidence that termination of her father's parental rights was in Sally's best interest.

## IV. Don's Father's Appeal

Don's father contends that the evidence is legally and factually insufficient to show that he was convicted of aggravated sexual assault of a child under circumstances in which he was criminally responsible for serious injury of the child. He also contends that this conviction was too distant or remote in time to support termination and that the evidence is legally and factually insufficient to support the jury's finding that termination of his parental rights was in Don's best interest.

### A. Applicable law

A finding that a parent has "been convicted or has been placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for the death or serious injury of a child" under the Penal Code's provision pertaining to aggravated sexual assault may support termination. TEX. FAM. CODE § 161.001(b)(1)(L)(viii). A person who engages in a sexual act with

18

a child less than 14 years of age commits an aggravated sexual assault. TEX. PENAL CODE § 22.021(a)(1)(B), (a)(2)(B).

The Family Code does not define "serious injury," so we give these words their ordinary meaning. *In re A.L.*, 389 S.W.3d 896, 900–01 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "Serious" means "having important or dangerous possible consequences" and "injury" connotes "hurt, damage, or loss sustained." *Id.* (relying on definition adopted in *C.H. v. Dep't of Family & Protective Servs.*, No. 01-11-00385-CV, 2012 WL 586972 (Tex. App.—Houston [1st Dist.] Feb. 23, 2012, pet. denied) (mem. op.)). The offense therefore need not involve bodily injury; emotional or psychological hurt suffices. *C.H.*, 2012 WL 586972, at *5.

Certain convictions imply infliction of serious injury. *In re W.J.B.*, No. 01-15-00802-CV, 2016 WL 1267847, at *7 (Tex. App.—Houston [1st Dist.] Mar. 31, 2016, no pet.) (mem. op.) (citing *In re L.S.R.*, 92 S.W.3d 529 (Tex. 2002) (per curiam)). This includes convictions for aggravated sexual assault of a child. *See In re M.A.S.*, No. 06-16-00059-CV, 2016 WL 7405849, at *2 (Tex. App.—Texarkana Dec. 22, 2016, no pet.) (mem. op.) (aggravated sexual assault committed by father at age of 17 against unrelated 12- or 13-year-old victim serious enough offense to imply serious injury).

**B.    Analysis**

Don's father was convicted of the sexual assault of a child in 2001. He was 20 years old at the time of the offense and his female victim, with whom he engaged in fellatio and sexual intercourse, was 13 years old. The father initially was placed on deferred adjudication community supervision for five years, but was later convicted of the offense after violating the terms of his community supervision. He also is required to register as a sex offender for the rest of his life as a result, because an aggravated sexual assault conviction is categorized as a sexually violent offense. *See* TEX. CODE CRIM. PROC. art. 62.001(6)(A), 62.101(a)(1).

The father admitted to the offense on the stand. He explained, "I was young, making mistakes." But he insisted that he has changed since he committed the offense, some 18 years earlier.

Don's father contends that, while inappropriate, his sexual encounter with his 13-year-old victim was consensual and that there is no evidence that she suffered serious injury. As an initial matter, we note that he did not testify as to the circumstances of the aggravated sexual assault and the record is devoid of evidence that the underlying acts were consensual. At any rate, his victim's age categorically precluded consent. *See May v. State*, 919 S.W.2d 422, 424 (Tex. Crim. App. 1996) (child under 14 years of age cannot legally consent to sex and consent therefore is not an available defense); *accord In re B.W.*, 313 S.W.3d 818, 821 (Tex. 2010). This

20

bright-line rule rests on a longstanding judgment that "children under fourteen lack the capacity to understand the significance of agreeing to sex." *B.W.*, 313 S.W.3d at 822. We thus reject Don's father's argument that the purportedly consensual nature of the sexual conduct underlying the offense contradicts or undermines a finding of serious injury. Sexual activity is always accompanied by a possibility of important or dangerous consequences, including emotional or psychological hurt, and the possibility of realizing these consequences is magnified where children under 14 years of age are concerned due to their inability to meaningfully apprehend the nature of sex and its possible outcomes. *See id.* at 822–23; *see also Mathews v. State*, 918 S.W.2d 666, 669 (Tex. App.—Beaumont 1996, pet. ref'd) (defendant convicted of aggravated sexual assault of child younger than 14 years after deferred adjudication probation revoked; noting that sexual intercourse with girl of such tender years has high probability of resulting in mental and emotional scarring). We therefore hold that the jury could infer serious injury from Don's father's conviction for aggravated sexual assault of a child under 14 years of age for the purpose of termination under section 161.001(b)(1)(L).

Don's father also contends that his conviction for aggravated sexual assault was too distant or remote in time to constitute legally or factually sufficient evidence supporting termination under section 161.001(b)(1)(L). He relies on decisions stating that misconduct occurring long ago will not support termination. *E.g.*,

*Hendricks v. Curry*, 401 S.W.2d 796, 800 (Tex. 1966). But this is not a universal principle; the dispositive inquiry is whether the past continues to bear on the present. As the Court said in *Hendricks*, termination may not be "based solely upon conditions which existed in the distant past but no longer exist." *Id.*; *accord Avery v. State*, 963 S.W.2d 550, 552 (Tex. App.—Houston [1st Dist.] 1997, no writ). The father's conviction for aggravated sexual assault of a child less than 14 years of age requires him to register as a sex offender for the rest of his life. *See* TEX. CODE CRIM. PROC. art. 62.001(6)(A), 62.101(a)(1). In requiring lifetime registration, the Legislature has made a policy decision that the crime for which Don's father was convicted will never be so remote that it will no longer be a matter of legitimate public concern. *See Young v. State*, 341 S.W.3d 417, 426 (Tex. Crim. App. 2011) (concern about repeat sex offenses and desire to thwart future sex crimes underlies registration requirement). We therefore hold that Don's father's 2001 conviction constitutes legally and factually sufficient evidence to support the jury's finding in favor of the termination of his parental rights under section 161.001(b)(1)(L).

We thus conclude that the evidence was legally and factually sufficient to prove by clear and convincing evidence that termination was warranted under section 161.001(b)(1)(L). Having decided that the evidence adequately supports this finding, we need not consider whether it would support the other predicate grounds for termination—sections 161.001(b)(1)(D) and 161.001(b)(1)(E)—considered by

the jury. *See* TEX. R. APP. P. 47.1; *A.V.*, 113 S.W.3d at 362; *S.C.F.*, 522 S.W.3d at 701.

Don's father further contends that his conviction for aggravated sexual assault of a child under 14 years of age is not legally and factually sufficient to support the jury's finding that termination was in Don's best interest. The father argues that he has a close relationship with Don and has been a father to his other children without incident. Evidence that a parent has sexually abused one child, however, is a relevant consideration when a jury decides whether the parent poses a danger to the emotional and physical well-being of other children. *See In re R.W.*, 129 S.W.3d 732, 742 (Tex. App.—Fort Worth 2004, pet. denied). Don's father acknowledged his conviction and explained to the jury that he made a mistake but has changed. The jury, however, was free to disbelieve him based on its assessment of his demeanor and credibility and conclude that he posed a danger to Don's emotional or physical well-being. *See J.O.A.*, 283 S.W.3d at 346; *see also R.W.*, 129 S.W.3d at 743 (evidence of father's past inappropriate sexual relationship with a 16-year-old girl relevant to jury's decision as to whether he posed danger to child).

To the extent that the father contends evidence of his close relationship with Don fatally undermines the jury's best-interest finding, we note that Don is merely 6 years old and that the natural affection that he feels for his father does not necessarily outweigh the seriousness of his father's status as a registered sex

23

offender. *See J.J.S.*, 2017 WL 4518595, at *11. In addition, the record shows that Don's father, for the most part, has not given Don the consistent emotional and economic support that a child needs to thrive. The jury heard evidence that Don's father hardly saw him after the mother and father stopped seeing one another. The father conceded that he saw Don just twice between 2013 and 2015. He also admitted that he did not know exactly where his son lived and "didn't go and checkup on him." Don has never been in his father's care, and the father has not paid child support despite being continuously employed since his release from prison in 2008.

On this record, a reasonable jury could have formed a firm belief or conviction that the termination of the father's parental rights was in Don's best interest. Further, the disputed evidence was not such that the jury could not have resolved these disputes in favor of its best-interest finding. We thus hold that the evidence was legally and factually sufficient to show by clear and convincing evidence that termination of his father's parental rights was in Don's best interest.

## CONCLUSION

We affirm the judgment of the trial court.

## SUPPLEMENTAL OPINION ON REHEARING

The mother moves for rehearing. Her counsel advises that the mother filed a motion for new trial but that counsel failed to include it in the appellate record. Counsel has requested that the district clerk supplement the record with copies of

24

the mother's new-trial motion and the trial court's order denying it. Because she moved for new trial, the mother contends that she preserved her evidentiary sufficiency points for review and requests that we decide them on the merits.

We deny the mother's motion for rehearing, but withdraw our opinion of February 12, 2019, and substitute this opinion, including its supplemental opinion on rehearing in the original opinion's place. Our judgment remains unchanged.

The jury found that the mother's parental rights should be terminated under section 161.001(b)(1)(D), (E), (O), or (P) of the Family Code and that termination was in the children's best interest. Subsections (D), (E), (O), and (P) provide for termination if a jury finds by clear and convincing evidence that the parent has:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

> * * *

> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child;

> (P) used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child.

TEX. FAM. CODE § 161.001(b)(1)(D), (E), (O), (P).

When the children came into the Department's care, the mother tested positive for cocaine and marijuana. Her test results indicated that she had used cocaine more than once but not every day and that she was a chronic user of marijuana.

While this case was pending, the mother tested positive for drugs twice more. She tested positive for cocaine in July 2017 and her results indicated more than one-time use. She later tested positive for both cocaine and methamphetamine in March 2018. Her test results once again indicated more than one-time use of cocaine.

The mother testified that she has been using marijuana for two decades and cocaine for a decade. She denied intentionally using methamphetamine, notwithstanding the positive test result for that drug. She speculated that perhaps methamphetamine had been mixed into the cocaine she used.

The mother agreed that her children deserve a sober parent and conceded that her drug use has harmed Don. She agreed that she failed to stay sober, contrary to the terms of her family service plan. She has been to rehab three times since 2000, including in October 2017, after which she again tested positive for drugs. She testified that she believes that she has quit using cocaine for good now. But she admitted that staying sober is difficult and that relapses are possible.

Kimberly Isaac, a drug-recovery coach who worked with the mother for several months, testified about the mother's drug use and her efforts to remain sober.

26

Isaac described the mother as an engaged participant in the drug-recovery program. But Isaac also had some concerns. Honesty, Isaac testified, is important to recovery, and the mother has not always been honest. At trial, the mother denied using methamphetamine, but admitted to Isaac that she did use it. Isaac acknowledged that the relapse rate for users of methamphetamine and cocaine is very high, and that there is no guarantee that the mother will not continue to use drugs. The mother participated in three drug rehab programs and relapsed all three times.

Based on this evidence, reasonable jurors could have formed a firm belief or conviction that:

- the mother continued to use illegal drugs despite her service plan's directive that she refrain from doing so;
- her illegal drug use endangered the children's health and safety; and
- her illegal drug use endangered the children's physical or emotional well-being.

*See J.M.T.*, 519 S.W.3d at 269; *J.O.A.*, 283 S.W.3d 345; *Walker*, 312 S.W.3d at 617–18; *Toliver*, 217 S.W.3d at 98. Given the record, reasonable jurors could have resolved the disputed evidence in favor of these findings. In particular, we note that credibility assessments belong solely to the jury, which was free to disbelieve the mother's professed commitment to sobriety.

We therefore conclude that the evidence is legally and factually sufficient to show by clear and convincing evidence that termination was warranted under section 161.001(b)(1)(D), 161.001(b)(1)(O), and 161.001(b)(1)(P). Having decided that the

evidence suffices to support these findings, we need not consider whether it would support the other predicate ground for termination—section 161.001(b)(1)(E)—found by the jury. *See* TEX. R. APP. P. 47.1; *A.V.*, 113 S.W.3d at 362; *S.C.F.*, 522 S.W.3d at 701.

The evidence of the mother's longstanding and continued drug abuse likewise is legally and factually sufficient to support the jury's finding that termination of her parental rights was in her children's best interest. *See A.C.*, 394 S.W.3d at 642; *In re E.R.W.*, 528 S.W.3d at 266. The jury reasonably could have found that she had habitually used marijuana, regularly used cocaine, and continued doing drugs even after her parental rights were at stake. The jury also reasonably could have found that she was not entirely honest about the extent of her drug abuse. The mother conceded that her children deserved a sober parent, and the jury reasonably could have found that it was not likely that she would remain sober, given her long history of drug abuse, including continued use after multiple tries at rehabilitation.

A reasonable jury could have formed a firm belief or conviction that the termination of the mother's parental rights was in the children's best interest and the disputed evidence was not such that the jury could not have resolved these disputes in favor of its best-interest finding. Accordingly, we conclude that the evidence was legally and factually sufficient to show by clear and convincing evidence that termination of the mother's parental rights was in her children's best interest.

* * *

Don's father and Sally's father also moved for rehearing. We have denied their respective motions by separate orders. In an accelerated appeal, like this one, we "may deny the right to file a motion for rehearing." TEX. R. APP. P. 49.4. As all three parents have availed themselves of the opportunity to seek rehearing, the court will not entertain further motions for rehearing after the issuance of this opinion.


                                  Gordon Goodman
                                  Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.